**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____

RASTELLI PARTNERS, LLC, *et al.*, :
:
Plaintiffs, :
:
v. : Civ. No. 23-2967 (RBK/AMD)
:
JAMES A. BAKER, *et al.*, : **OPINION**
:
Defendants. :
_____ :
:
DF VENTURES, LLC, *et al.*, :
:
Plaintiffs, :
:
v. : Civ. No. 23-3126 (RBK/AMD)
:
FOFBAKERS HOLDING COMPANY : **OPINION**
LLC, *et al.*, :
:
Defendants. :
_____ :

**KUGLER**, United States District Judge:

     **THIS MATTER** comes before the Court upon (1) Plaintiffs DF Ventures, LLC and

Daymond John (together, the "DF Plaintiffs"), and Plaintiffs Rastelli Partners, LLC, Rastelli

Brothers, Inc. d/b/a Rastelli Foods Group, Raymond M. Rastelli, Jr. and Raymond Rastelli III's

(collectively, the "Rastelli Plaintiffs") (DF Plaintiffs and Rastelli Plaintiffs collectively,

"Plaintiffs") Motion for Attorneys' Fees, (Civ. No. 23-2967, ECF No. 44; Civ. No. 23-3126,

ECF No. 51), which the Court previously granted, (Civ. No. 23-2967, ECF No. 46; Civ. No. 23-

3126, ECF No. 54); and (2) Defendants FOFBakers Holding Company, LLC, Jabezbaker, LLC,

James A. Baker a/k/a Al Baker, Brittani Bo Baker, and Sabrina Baker's (collectively,

"Defendants") Motion for Reconsideration ("MFR"), (Civ. No. 23-2967, ECF No. 50; Civ. No. 23-3126, ECF No. 58).

For the reasons set forth, (1) Defendants' Motion for Reconsideration is **DENIED** and (2) Plaintiffs are **awarded attorneys' fees and litigation costs in the amount of $316,900.46**.

## I.      BACKGROUND

### A.      Factual Background

The Court offers a factual and procedural background covering only those matters that are relevant to the present motions. A more in-depth treatment can be found in the Court's prior Opinions of July 21, 2023. (Civ. No. 23-2967, ECF No. 41; Civ. No. 23-3126, ECF No. 47). The Bakers and Mr. John met in 2013 through the television show Shark Tank, where the former appeared to present their business selling boneless ribs. (Civ. No. 23-3126, ECF No. 1, Compl. ¶ 42). The family and Mr. John launched a joint business venture, which by 2015 had expanded to include all the parties to this lawsuit. (*Id*. ¶¶ 2, 28, 60–61). A breakdown in the relationship led to an earlier lawsuit, in 2019, that resolved the same year when the parties entered into a Settlement Agreement. (*Id*. ¶¶ 75–77, 79–80). Coincident with the Settlement Agreement, the parties executed an Amended Operating Agreement and a corresponding Addendum and Supplement (collectively, the "Settlement Documents"). (Civ. No. 23-3126, ECF No. 1, Compl. ¶ 79–80).

The present lawsuit was initiated when Plaintiffs accused Defendants—and Brittani Baker in particular—of violating confidentiality and non-disparagement provisions of the 2019 Settlement Agreement. (*Id*. ¶¶ 131–46). The Court ultimately agreed with Plaintiffs' contention, citing numerous social media posts from Defendants accusing Plaintiffs of committing fraud and running an organized crime scheme, among other attacks (Civ. No. 23-3126, ECF No. 47 at 6–11). The Court also concluded that Plaintiffs were in full compliance with the Settlement

Documents. (Civ. No. 23-2967, ECF No. 41 at 22; Civ. No. 23-3126, ECF No. 47 at 14). The procedural aspects of the Court's decision are discussed in the next section.

In settling their 2019 lawsuit, the parties also agreed to an assignment of attorneys' fees and costs in the event of a future dispute. The Supplement to the 2019 Settlement Agreement provides that in any action to enforce the Agreement, "the prevailing party shall be paid its reasonable attorney fees and costs from the non-prevailing party." (Civ. No. 23-2967, ECF No. 1, Compl. at 232; Civ. No. 23-3126, ECF No. 1, Compl., Ex. C at 16).

### B.   Procedural Background

The Rastelli Plaintiffs initiated the present lawsuit on May 31, 2023, when they filed their complaint (Civ. No. 23-2967, ECF No. 1) and applied orally for a temporary restraining order (TRO) and preliminary injunction against the Bakers. (*See* Civ. No. 23-2967, ECF No. 3). The same day, the Court issued an Order to Show Cause, which denied Plaintiffs' application for a TRO and ordered the Bakers to show cause as to why the Court should not issue a preliminary injunction against them to take down all their social media posts about Plaintiffs and bar them from making similar posts in the future. (*Id.*). The DF Plaintiffs filed a similar complaint on June 7, 2023, (Civ. No. 23-3126, ECF No. 1), and similarly applied for a preliminary injunction and TRO, (*see* Civ. No. 23-3126, ECF No. 5), which the Court dealt with in the same manner. (*Id.*) Since then, both matters have proceeded jointly, although under separate dockets numbers, due to the common questions of fact and law between them.

The Court held an evidentiary hearing on the dispute over six days beginning June 13, 2023, and ending July 5, 2023. (Civ. No. 23-2967, ECF Nos. 13, 15, 22–24, 26; Civ. No. 23-3126, ECF Nos. 18–19, 31, 35–37). At the end of the June 14 hearing date, the Court consolidated the preliminary injunction hearing with a trial on the merits pursuant to Federal

Rule of Civil Procedure 65(a)(2), thus turning the proceeding into an application for a permanent injunction. (Civ. No. 23-2967, ECF No. 31, Transcript of Hearing on Order to Show Cause at 310). In an Opinion and Order on July 21, 2023, the Court granted the permanent injunction against Defendants. (Civ. No. 23-2967, ECF Nos. 41–42; Civ. No. 23-3126, ECF Nos. 47–48). The Order forever prohibited the Bakers and their officers, agents, servants, employees, and attorneys from making any kind of public negative comments or encouraging anyone else to make any negative comments that would disparage, defame, or otherwise adversely impact the Plaintiffs' reputations. (Civ. No. 23-2967, ECF No. 42; Civ. No. 23-3126, ECF No. 48).

At the conclusion of the hearing, Plaintiffs filed a Joint Motion for Attorneys' Fees and Costs ("Motion for Attorneys' Fees") for their work securing the permanent injunction. (Civ. No. 23-2967, ECF No. 44; Civ. No. 23-3126, ECF No. 51). After Defendants' deadline for filing their opposition passed, the Court on August 23, 2023, issued an Order granting Plaintiffs' Motion. (Civ. No. 23-2967, ECF No. 46; Civ. No. 23-3126, ECF No. 54). Later that same day, Defendants filed a letter that included an untimely brief opposing the Motion. (Civ. No. 23-2967, ECF No. 47; Civ. No. 23-3126, ECF No. 55). Then, on August 28, 2023, Defendants filed the Motion for Reconsideration of the Court's Order granting attorneys' fees that is presently before the Court. (Civ. No. 23-2967, ECF No. 50; Civ. No. 23-3126, ECF No. 58). Defendants seek reconsideration pursuant to both Local Civil Rule 7.1 and Federal Rule of Civil Procedure 60(b). (*Id.*) Plaintiffs opposed the Motion for Reconsideration on September 18, 2023. (Civ. No. 23-2967, ECF No. 61; Civ. No. 23-3126, ECF No. 71).

As Defendants' Motion for Reconsideration has been pending, the parties have completed briefing as to the amount of attorneys' fees and costs to which Plaintiffs are entitled. On September 13, 2023, Plaintiffs filed affidavits and accompanying invoices as to what their

counsel should receive. (Civ. No. 23-2967, ECF No. 60; Civ. No. 23-3126, ECF No. 69–70).

Defendants challenged the requested fees in a letter on September 27, 2023, (Civ. No. 23-2967,

ECF No. 66; Civ. No. 23-3126, ECF No. 77), to which Plaintiffs replied on October 4, 2023.

(Civ. No. 23-2967, ECF No. 68; Civ. No. 23-3126, ECF No. 79). In response to a request from

the Court, Plaintiffs supplemented their filings in a letter on November 22, 2023. (Civ. No. 23-

2967, ECF No. 93).

## II.    LEGAL STANDARD

### A.    Motion for Reconsideration under Local Civil Rule 7.1

Local Civil Rule 7.1 allows a party to seek reconsideration of matters or controlling

decisions "which [it] believes the Judge has overlooked" in issuing an order. Local Civ. R. 7.1(i).

"The standard for reargument is high and reconsideration is to be granted only sparingly."

*Yarrell v. Bartkowski*, Civ. No. 10-5337, 2012 WL 1600316, at *3 (D.N.J. May 7, 2012). A court

will grant a motion for reconsideration only where "dispositive factual matters or controlling

decisions of law were overlooked by the court in reaching its prior decision." *United States v.*

*Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). To succeed on a motion for

reconsideration, a party must show: "(1) an intervening change in the controlling law; (2) the

availability of new evidence not available when the court [issued its order]; or (3) the need to

correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel.*

*Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### B.    Motion for Relief from an Order under Rule 60(b)

Federal Rule of Civil Procedure 60(b) permits district courts to provide relief from their

own judgments, orders, or proceedings. "Rule 60(b) allows a party to seek relief from a final

judgment, and request reopening of his case, under a limited set of circumstances including

fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). In this case, Defendants cite Rule 60(b)(6), which "is a catch-all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014), *cert. denied sub nom.*, *Wetzel v. Cox*, 575 U.S. 929 (2015).

Rule 60(b) motions are left to the sound discretion of the trial court, consistent with accepted legal principles applied in light of all relevant circumstances. *See Pierce Assoc. Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988). Relief under Rule 60(b) is appropriate only when the "overriding interest in the finality and repose of judgments may properly be overcome." *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987). "A court may grant a Rule 60(b) motion only in extraordinary circumstances, and a Rule 60(b) motion is not appropriate to reargue issues that the court has already considered and decided." *Weber v. Pierce*, 186 F. Supp. 3d 324, 328 (D. Del. 2016) (citations and footnote omitted).

### C.    Prevailing Party Status

The test to determine prevailing party status is "well established" in the Third Circuit. *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh*, 964 F.2d 244, 250 (3d Cir. 1992). "The test, which is a two-part inquiry, requires a court to determine whether: (1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant." *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 259 (D.N.J. 2000) (citing *Metro. Pittsburgh Crusade*, 964 F.2d at

250). The application of the test is left to the sound discretion of the district court. *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 541 (D.N.J. 1997), *aff'd*, 159 F.3d 1350 (3d Cir. 1998).

To determine whether a party has met the first step of the prevailing party test, a court compares the relief sought in the lawsuit to the relief eventually obtained. *P.G.*, 124 F. Supp. 2d at 259. "The plaintiff must show that the relief obtained caused a material alteration in his legal relationship with the defendant and that this alteration is not merely technical or de minimis." *Id.* (citing *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 593 (3d Cir. 2000)). "[P]laintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type." *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 912 (3d Cir. 1985).

At the second step of the prevailing party test, the district court should assess whether the litigation "constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." *Metro. Pittsburgh Crusade*, 964 F.2d at 250 (quoting *Dunn v. United States*, 842 F.2d 1420, 1433 (3d Cir. 1988)). "The plaintiff's lawsuit need not be the sole cause" of obtaining such relief. *Id.*

### D.     Attorneys' Fees

In the Third Circuit, "[t]he starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "There is a strong presumption that the lodestar amount is reasonable," *Eichenlaub v. Twp. of Indiana*, 214

F. App'x 218, 222 (3d Cir. 2007) (internal quotation marks omitted), although it may still require subsequent adjustment. *Hensley*, 461 U.S. at 434.

A district court has substantial discretion is determining what constitutes a reasonable rate. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). Generally, unless the special expertise of distant counsel is necessary or local counsel is unwilling to accept the case, "the relevant rate is the prevailing rate in the forum of the litigation." *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). "The prevailing rate in this vicinage is the Philadelphia/New Jersey legal market." *D'Ottavio v. Slack Techs.*, No. 18-9082, 2022 WL 15442211, at *8 (D.N.J. Oct. 26, 2022).

The fee applicant carries the initial burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered. *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (citations omitted). "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D. v. Manville Bd. of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998) (citation omitted). "Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (citations omitted). The applicant's initial burden cannot be met, however, if the only evidence submitted is the self-serving declaration of the applicant's own counsel. *Americans for Prosperity v. Grewal*, Civ. No. 19-14228, 2021 WL 1153194, at *12 (D.N.J. Mar. 26, 2021). If the applicant fails to sustain its burden, a court "must use its discretion to determine the market rate." *L.J.*, 373 F. App'x at 297 (citations omitted); *see also Loughner v.*

*Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) ("Having rejected the prevailing party's evidence of rates, the District Court was free to affix an adjusted rate.").

In calculating the hours reasonably expended in the litigation, "specificity is critical." *United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007). "A request for fees must be accompanied by fairly definite information as to hours devoted to various general activities, *e.g.*, partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Id.* (quotation marks omitted). However, specificity is required only "to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal quotation marks omitted). Further, the party opposing the fees "cannot merely allege in general terms that the time spent was excessive." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). Courts may reduce the award when the documentation of hours is inadequate, *United Auto. Workers Loc. 259 Soc. Sec. Dep't*, 501 F.3d at 291, or when the hours are not "reasonably expended," meaning hours that are deemed "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

## III.   DISCUSSION

Because the outcome of Defendants' Motion for Reconsideration affects whether the Court will award attorneys' fees and costs to Plaintiffs, the Court will address the Motion for Reconsideration before turning to the amount due to Plaintiffs.

### A.   Defendants' Motion for Reconsideration

Defendants' Motion for Reconsideration is directed at the Court's Order granting Plaintiffs' Motion for Attorneys' Fees. (Civ. No. 23-2967, ECF No. 46; Civ. No. 23-3126, ECF No. 54). Defendants seek reconsideration pursuant to both Local Civil Rule 7.1 and Federal Rule

of Civil Procedure 60(b). They do not contest the validity of the provision in the 2019 Settlement Documents assigning attorneys' fees and costs to the "prevailing party." Rather, they argue that the Court misapplied the standard for prevailing party status in its Order granting Plaintiffs' Motion.

The crux of Defendants' argument is that Plaintiffs are not a prevailing party at this stage in the litigation. First, Defendants characterize the case as being in its "relative infancy" because several causes of action that Plaintiffs pleaded in their original complaints, as well as Defendants' counterclaims, were not adjudicated at the evidentiary hearing. (MFR at 5–6). Thus, Defendants maintain, they could still prevail on their counterclaims that Plaintiffs violated their obligations under the 2019 Settlement Documents, justifying Defendants' failure to comply with the confidentiality and non-disparagement provisions of the 2019 Settlement Agreement. (*Id*. at 6). If Defendants were to prevail in such a manner, they argue, awarding Plaintiffs attorneys' fees now would result in a "manifestly unjust outcome." (*Id*.).

Second, and relatedly, Defendants argue that "there has been no dispositive relief granted on the merits of any of the disputed claims at this time." (*Id*. at 9). To make this point, they elide the fact that the Court granted Plaintiffs a *permanent* injunction, instead mischaracterizing the relief granted as a "preliminary injunction." (*See*, *e.g.*, *id*.). Hanging their hat on that label, they assert the absence of legal authority to award Plaintiffs attorneys' fees based on "favorable rulings in the context of an application for preliminary injunctive relief alone." (*Id*.).

Defendants' arguments miss the mark, as Plaintiffs are clearly a prevailing party under the Third Circuit standard. To begin, Defendants' assertion that the Court has not granted dispositive relief on the merits of any disputed claim is incorrect. The Court granted a permanent injunction after consolidating the preliminary injunction hearing with the trial *on the merits*,

pursuant to Federal Rule of Civil Procedure 65(a)(2). *See Plummer v. Am. Inst. of Certified Pub. Accts.*, 97 F.3d 220, 229 (7th Cir. 1996) ("[W]hen the plaintiff is seeking a permanent injunction . . . the issue is not whether the plaintiff has demonstrated a reasonable *likelihood* of success on the merits, but whether he has *in fact* succeeded on the merits.") (emphasis in original) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)). In reaching that outcome, the Court found that Defendants breached the 2019 Settlement Agreement while Plaintiffs were in full compliance. (Civ. No. 23-2967, ECF No. 41 at 18, 22; Civ. No. 23-3126, ECF No. 47 at 13–14). Thus, the merits of at least some of Plaintiffs' claims have been finally adjudicated. This is true regardless of whether underlying causes of action in Plaintiffs' complaints and Defendants' counterclaims remain pending.

Moving now to the Third Circuit's two-part inquiry to determine the prevailing party, Plaintiffs satisfy the first prong because they obtained relief on a significant claim in the litigation. The relief Plaintiffs sought in their application for a preliminary injunction included an order compelling Defendants to take down all social media posts that disparaged Plaintiffs and prohibiting Defendants from making disparaging posts or public comments in the future. (Civ. No. 23-2967, ECF No. 3; Civ. No. 23-3126, ECF No. 5). The Court's Opinion and Order on July 21, 2023, which granted the permanent injunction against Defendants, granted precisely this relief. (Civ. No. 23-2967, ECF Nos. 41–42; Civ. No. 23-3126, ECF Nos. 47–48). Accordingly, the relief obtained by Plaintiffs caused a "material alteration" in the parties' legal relationship.[1] *See P.G.*, 124 F. Supp. 2d at 259. The first prong is satisfied.

---

[1] Further support for this proposition can be found in the behavior of the parties after the Court granted the permanent injunction. Shortly after the July 21 Opinion and Order was issued, Defendants represented that they did in fact take down the social media posts that were the subject of the permanent injunction. (Civ. No. 23-2967, ECF No. 43; Civ. No. 23-3126, ECF Nos. 49). Later, when Brittani Baker made new disparaging social media posts, the July 21 Order

Plaintiffs also satisfy the second, causality prong of the prevailing party test. That there was a causal connection between the litigation and the relief obtained in this case is so obvious as to make a lengthy discussion unnecessary. Defendants violated the terms of the 2019 Settlement Documents by posting disparaging social media content about Plaintiffs. Plaintiff applied for injunctive relief, which was ultimately granted by the Court. As a result of that injunctive relief, the offending posts have been removed and Defendants are forever prohibited from making disparaging remarks about Plaintiffs or encouraging others to do so. Therefore, the litigation clearly was "a material contributing factor" in bringing about the desired relief. The second prong is also satisfied. In sum, Plaintiffs are the prevailing party and therefore entitled to attorneys' fees and costs under the terms of the 2019 Settlement Documents.

Accordingly, Defendants' Motion for Reconsideration under Local Civil Rule 7.1 is denied. As discussed, a party seeking reconsideration under that rule must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc.*, 176 F.3d at 677. Defendants assert only that the third basis for relief applies here. However, the Court did not err in deeming Plaintiffs to be the prevailing party. Further, Defendants' concern about a "manifestly unjust outcome" is baseless. Defendants argue that their contractual violations could yet be forgiven if they are able to prove that Plaintiffs breached first, (MFR at 6), but the Court has already found as a matter of law that Plaintiffs were in full compliance with the 2019 Settlement Documents.

---

afforded Plaintiffs a ready basis to move for an order holding Ms. Brittani Baker in contempt. (Civ. No. 23-2967, ECF No. 75; Civ. No. 23-3126, ECF No. 85). After the Court held Ms. Baker in civil contempt, (Civ. No. 23-2967, ECF No. 80; Civ. No. 23-3126, ECF No. 89), she represented to the Court that she deleted the second round of violative posts. (*See* Civ. No. 23-2967, ECF No. 88; Civ. No. 23-3126, ECF No. 93).

(Civ. No. 23-2967, ECF No. 41 at 22; Civ. No. 23-3126, ECF No. 47 at 14). Therefore, Defendants fail to show that its Motion for Reconsideration under Local Civil Rule 7.1 should be granted on any of the three permitted grounds. The Motion under Local Civil Rule 7.1 is denied.

The Motion for Reconsideration under Federal Rule of Civil Procedure 60(b) is also denied. Defendants allege neither fraud nor newly discovered evidence in support of their Motion, and the Court committed no mistake in issuing its Order. *See* Fed. R. Civ. P 60(b); *Gonzalez*, 545 U.S. at 528. Further, Defendants present insufficient grounds for the Court to provide relief from its Order for "any other reason." *See* Fed. R. Civ. P 60(b)(6). In short, the Motion does not present the "extraordinary circumstances," *Weber*, 186 F. Supp. 3d at 328, that merit overcoming the "overriding interest in the finality and repose of judgments." *Harris*, 834 F.2d at 364.

Therefore, the Court's Order granting Plaintiffs' Motion for Attorneys' Fees remains undisturbed. We now turn to the question of what amount of fees and costs the Defendants owe to Plaintiffs' counsel.

### B. Plaintiffs' Motion for Attorneys' Fees and Costs

Following the Third Circuit's lodestar analysis, the Court will first determine a reasonable hourly rate for the attorneys involved in this litigation and then move to a calculation of the hours of work reasonably expended. Plaintiffs' counsel consists of personnel at two law firms and one solo practitioner: (1) Hyland Levin Shapiro LLP ("Hyland Levin"), the firm representing the Rastelli Plaintiffs; (2) Gordon Rees Scully Mansukhani, LLP ("Gordon Rees"),

the firm representing the DF Plaintiffs; and (3) Lawrence Fox, counsel to Plaintiff Daymond John.

After determining the amount of legal fees to which Plaintiffs' counsel are entitled, the Court will likewise examine Plaintiffs' request for reimbursement for litigation costs.

### i. *Reasonable Hourly Rate*

To determine if the hourly rates charged by Plaintiffs' counsel were reasonable, the Court must first discern the hourly rates that counsel actually charged. This has proven more complicated than it needed to be because several attorneys in their affidavits attested that they charged a certain rate but, in practice, actually worked at a much-reduced rate. For example, David A. Dahan, a partner at Hyland Levin, attested in an affidavit that he billed at an hourly rate of $515/hour, (Civ. No. 23-2967, ECF No. 60-7 at 4), but an examination of the firm's billing records shows that, after several "courtesy discounts," his hourly rate was actually $424.97/hour. "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995). By the same logic, an hourly rate not billed to one's own client is also not properly billed to an adversary. The Court thus relies on its own calculation of the hourly rates that each attorney and paralegal actually billed its clients.

The personnel at Hyland Levin and Mr. Fox billed their clients at the following hourly rates:[2]

---

[2] The billing information for Hyland Levin's personnel is taken from their invoices covering the period May 1, 2023, to July 28, 2023, (Civ. No. 23-2967, ECF No. 60-7 at 11–31). Especially instructive was the firm's summary report appearing at the end of their submission. (*Id*. at 31). The billing information for Mr. Fox is taken from his invoice covering the period May 19, 2023, to August 4, 2023, (Civ. No. 23-3126, ECF No. 70-1), as well as his sworn statement as to the total amount he charged his client. (Civ. No. 23-3126, ECF No. 70 ¶ 13).

| Timekeeper | Title | Experience | Amount Billed | Hours Billed | Hourly Rate |
|---|---|---|---|---|---|
| *Hyland Levin* | | | | | |
| Benjamin A. Levin | Partner | 40+ years | $46,602.92 | 101.2 | $460.50 |
| David R. Dahan | Partner | 26 years | $110,109.92 | 259.1 | 424.97 |
| Megan Knowlton Balne | Partner | 13 years | $2,749.74 | 6.5 | 423.04 |
| Beau C. Wilson | Associate | 6 years | $2,012.43 | 6.7 | 300.36 |
| Paige A. Joffe | Associate | 3 years | $71,780.90 | 323.9 | 221.61 |
| Lori A. Clarke-Ratliff | Paralegal | 40+ years | $4,724.64 | 21.2 | 222.86 |
| Mary Alice Rogers | Paralegal | 22 years | $6,221.50 | 23.9 | 260.31 |
| Chelsea J. Householder | Paralegal | 1 year | $850.95 | 4 | 212.74 |
| *Solo Practitioner* | | | | | |
| Lawrence Fox | N/A | 32 years | $69,562.50 | 220.75 | $315.12 |

Determining the hourly rates for the personnel at Gordon Rees presents a special case. While the professionals there advertise a certain hourly rate, the firm agreed to cap their fees at $75,000 for all the work they performed for their clients from May 19, 2023, through August 4, 2023. (Civ. No. 23-3126, ECF No. 69 ¶ 7). After August 4, 2023, they then charged their advertised rates. (*Id.*) The following table lists the personnel's advertised rates, which will be used at this step of the lodestar analysis.[3]

| Timekeeper | Title | Experience | Hourly Rate |
|---|---|---|---|
| *Gordon Rees* | | | |
| Mercedes Colwin | Partner | 31 years | $650.00 |
| Jeffrey Camhi | Partner | 11 years | $650.00 |
| Brittany Primavera | Partner | 10 years | $650.00 |
| Lindsey Blackwell | Sr. Counsel | 9 years | $485.00 |
| Maggie Delany | Associate | 4 years | $350.00 |
| Hannah Kucine | Associate | 3 years | $350.00 |
| Various Paraprofessionals | Paralegal | Undisclosed | $150.00 |

---

[3] The billing information for Gordon Rees's personnel is taken from the affidavit of Mercedes Colwin. (Civ. No. 23-3126, ECF No. 69 ¶ 6).

Having established the hourly rates charged by Plaintiffs' counsel, the Court finds that Plaintiffs fail to meet their burden of establishing a reasonable market rate for work performed by anyone other than their most senior attorneys. The Court first looks to an affidavit filed by counsel for Hyland Levin on September 13, 2023, which purports to provide guidance on the subject. (Civ. No. 23-2967, ECF No. 60). That affidavit cites as evidence of reasonable market rates two matrices—the Laffey matrix and the Fitzpatrick matrix—that provide appropriate billing rates for attorneys in the Washington, DC, market. (*Id*. at 2–3). These matrices tell the Court nothing about the prevailing rate in the Philadelphia/New Jersey legal market, which is the relevant rate in this vicinage. *See D'Ottavio*, 2022 WL 15442211, at *8.

Further, the matrices have seldom been cited favorably within the Third Circuit. Counsel concedes that the Fitzpatrick matrix has never been cited within the Third Circuit. (Civ. No. 23-2967, ECF No. 60 at 3). The Laffey matrix, counsel represents, has been cited twice, in *Interfaith Cmty. Org.*, 426 F.3d 694, and *Stadler v. Abrams*, Civ. No. 13-2741, 2018 WL 3617967 (D.N.J. July 30, 2018) (Kugler, J., opinion), *aff'd*, 785 F. App'x 66 (3d Cir. 2019), but neither opinion establishes the usefulness of the Laffey matrix here. *Interfaith Cmty. Org.* involved the special expertise of a DC firm and thus falls under an exception to the typical mode of analysis. 426 F.3d at 708. In *Stadler*, meanwhile, the Laffey matrix was considered only in the context of otherwise "ample support" for the hourly rates charged by counsel. 2018 WL 3617967, at *8. No such ample support exists here.

Additional affidavits submitted by Plaintiffs after the Court requested better evidence of a reasonable hourly rate are more helpful but still fail to provide a complete picture. On November 22, 2023, Plaintiffs filed three additional affidavits from attorneys who practice in New Jersey. (Civ. No. 23-2967, ECF No. 93). According to the affidavits:

- John Randy Sawyer, a law firm partner who has practiced in New Jersey and New York for 24 years, bills $600/hour. (*Id*. at 4–6).

- Brett Wiltsey, a law firm partner who has practiced in South Jersey for 22 years, bills $520/hour. (*Id*. at 8–10).

- Vincent T. Cieslik, a law firm partner who has practiced in South Jersey for 26 years, "often" bills over $400/hour, while "[s]ome of our most experienced, senior, and partnership level attorneys charge over $500.00/hour." (*Id*. at 12–14).

The Court will not consider the Sawyer affidavit because it is not specific to the Philadelphia/New Jersey legal market. The Wiltsey and Cieslik affidavits are on point, but they only speak to what the most senior law firm partners in the area make. This is problematic because both Hyland Levin and Gordon Rees seek fees for work performed by less experienced partners, senior counsel, associates, and paralegals. Therefore, the Court finds that Plaintiffs meet their burden of establishing a reasonable hourly rate for law firm partners with more than 20 years of experience, namely, no more than $520/hour. For other legal personnel who worked on this case, however, Plaintiffs fails to meet their burden of establishing a reasonable market rate. *See S.D.*, 989 F. Supp. at 656 ("This burden [of proving reasonable rates] is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys *with similar skill and experience*.") (emphasis added).

The Court therefore "must use its discretion to determine the market rate" for the other legal personnel. *See L.J.*, 373 F. App'x at 297. Faced with a similar dilemma of trying to fix reasonable hourly rates in the absence of evidence, the Third Circuit has looked to the fee

schedule established by Community Legal Services, Inc. ("CLS").[4] *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). The CLS fee schedule "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Id.* (citing *Rainey v. Philadelphia Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993)). It has also been favorably cited in the District of New Jersey. *See*, *e.g.*, *K.N. v. Gloucester City Bd. of Educ.*, Civ. No. 17-7976, 2022 WL 613846, at *3 (D.N.J. Mar. 2, 2022); *Rhodes v. Marix Servicing, LLC*, Civ. No. 12-1636, 2020 WL 5760455, at *5 (D.N.J. Sept. 28, 2020).

The Court will likewise look to the CLS fee schedule to set the maximum hourly rates it will allow as reasonable in this case. The CLS schedule sets a range of reasonable rates for attorneys and paralegals of different levels of experience. Considering the "essential character and complexity of the legal services rendered," *see L.J.*, 373 F. App'x at 296, the Court will set the middle of each range as the maximum reasonable hourly rate. On the one hand, Plaintiffs' counsel provided excellent representation under intense time pressure, as reflected in their ability to achieve a permanent injunction less than two months after filing for relief. On the other hand, the legal issue at the core of this case—breach of contract—was not unusually complex. Therefore, the middle of the CLS range appears to the Court to be an appropriate guidepost in the absence of other evidence from the parties. The CLS fee schedule is as follows:

| Role | Experience | CLS Range | Middle of Range |
|------|-----------|-----------|-----------------|
| Attorney | 25+ years | $735-850 | $792.50 |
| | 21-25 years | $630-715 | $672.50 |
| | 16-20 years | $535-625 | $580.00 |
| | 11-15 years | $420-525 | $472.50 |
| | 6-10 years | $320-415 | $367.50 |

---

[4] The current schedule, last updated January 19, 2023, can be viewed on CLS's website at https://clsphila.org/about-community-legal-services/attorney-fees/.

| | 2-5 years | $265-315 | $290.00 |
|---|---|---|---|
| | <2 years | $235-260 | $247.50 |
| Law student | N/A | $140-190 | $165.00 |
| Paralegal | 10+ years | $245-285 | $265.00 |
| | 1-10 years | $190-240 | $215.00 |

Comparing the hourly rates that Plaintiffs' counsel charged against the reasonable rates set by the Wiltsey affidavit and the CLS fee schedule reveals that the rates charged by Hyland Levin's personnel and Mr. Fox were uniformly reasonable, whereas those charged by some Gordon Rees attorneys must be adjusted downward.[5] The Court finds the following hourly rates to be reasonable and will use them in its lodestar analysis going forward.

| **Timekeeper** | **Title** | **Experience** | **Reasonable Hourly Rate** |
|---|---|---|---|
| ***Hyland Levin*** | | | |
| Benjamin A. Levin | Partner | 40+ years | $460.50 |
| David R. Dahan | Partner | 26 years | $424.97 |
| Megan Knowlton Balne | Partner | 13 years | $423.04 |
| Beau C. Wilson | Associate | 6 years | $300.36 |
| Paige A. Joffe | Associate | 3 years | $221.61 |
| Lori A. Clarke-Ratliff | Paralegal | 40+ years | $222.86 |
| Mary Alice Rogers | Paralegal | 22 years | $260.31 |
| Chelsea J. Householder | Paralegal | 1 year | $212.74 |
| ***Solo Practitioner*** | | | |
| Lawrence Fox | N/A | 32 years | $315.12 |
| ***Gordon Rees*** | | | |
| Mercedes Colwin | Partner | 31 years | $520.00 |
| Jeffrey Camhi | Partner | 11 years | $472.50 |
| Brittany Primavera | Partner | 10 years | $367.50 |
| Lindsey Blackwell | Sr. Counsel | 9 years | $367.50 |
| Maggie Delany | Associate | 4 years | $290.00 |
| Hannah Kucine | Associate | 3 years | $290.00 |

---

[5] In the final analysis, the downward adjustment makes no difference as to the amount to which Gordon Rees is entitled because they capped their fees at $75,000 for work performed through August 4, 2023. (Civ. No. 23-3126, ECF No. 69 ¶ 7).

| Various Paraprofessionals | Paralegal | Undisclosed | $150.00 |

### ii.        *Hours Reasonably Expended*

The Court now turns to the second step of the lodestar analysis, which is to determine the number of hours reasonably expended on the litigation. *See McKenna*, 582 F.3d at 455. The Court begins by establishing the date range during which time work performed by Plaintiffs' counsel is chargeable to Defendants. Plaintiffs seek attorneys' fees for their counsel's success in securing a permanent injunction. Therefore, Plaintiffs' counsel is entitled to fees starting on the date the Court issued an Order to Show Cause in each of the two companion cases as to why injunctive relief should not be granted to Plaintiffs. These Orders initiated the hearing that resulted in the Court granting the permanent injunction. In Civ. No. 23-2967, in which the Plaintiffs are represented by Hyland Levin, the relevant Order was issued on May 31, 2023. (ECF No. 3). In Civ. No. 23-3126, in which the Plaintiffs are represented by Gordon Rees and Mr. Fox, the Order was issued on June 7, 2023. (ECF No. 5). Mr. Fox was admitted *pro hac vice* in the latter case on June 9, 2023. (ECF No. 10). He is therefore entitled to fees starting on that date.

The Court granted the permanent injunction against Defendants on July 21, 2023, but Plaintiffs' counsel is also entitled to fees for the time it spent litigating its fee application after that date. *See Planned Parenthood of Cent. New Jersey v. Att'y Gen. of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application.").

Plaintiffs' counsel are thus entitled to reimbursement for work performed during the following dates:

- Hyland Levin: May 31, 2023, to July 21, 2023, plus any work after that date relating to its application for attorneys' fees.

- Gordon Rees: June 7, 2023, to July 21, 2023, plus any work after that date relating to its application for attorneys' fees.

- Mr. Fox: June 9, 2023, to July 21, 2023, plus any work after that date relating to its application for attorneys' fees.

The hours that personnel at Hyland Levin reported working during the relevant date range is reproduced in the table below. (Civ. No. 23-2967, ECF No. 60-7 at 15, 25, 30). Of the hours billed after July 21, 2023, only 0.4 hours charged by Paige A. Joffe, an associate at the firm, are for work that the Court cannot discern were related to the firm's application for attorneys' fees. (*Id*. at 29–30).

| Timekeeper | Hours Recorded | Downward Adjustment | Total Reimbursable |
|---|---|---|---|
| *Hyland Levin* | | | |
| Benjamin A. Levin | 80.9 | | 80.9 |
| David R. Dahan | 200 | | 200 |
| Megan Knowlton Balne | 4.9 | | 4.9 |
| Beau C. Wilson | 3.1 | | 3.1 |
| Paige A. Joffe | 302.3 | -0.4 | 301.9 |
| Lori A. Clarke-Ratliff | 16.7 | | 16.7 |
| Mary Alice Rogers | 11 | | 11 |
| Chelsea J. Householder | 0 | | 0 |

The hours that personnel at Gordon Rees reported working between June 7, 2023, and July 21, 2023, is reproduced in the table below. (Civ. No. 23-3126, ECF No. 69-1). Between July 22, 2023, and August 4, 2023, Mercedes Colwin, a partner at the firm, and Maggie Delany, an

associate, each logged an additional 0.2 hours for work that the Court can discern was related to the application for attorneys' fees. (*Id.* at 17).[6]

| Timekeeper | Hours Recorded | Upward Adjustment | Total Reimbursable |
|---|---|---|---|
| *Gordon Rees* | | | |
| Mercedes Colwin | 52.7 | +0.2 | 52.9 |
| Jeffrey Camhi | 0 | | 0 |
| Brittany Primavera | 134.4 | | 134.4 |
| Lindsey Blackwell | 30 | | 30 |
| Maggie Delany | 11.4 | +0.2 | 11.6 |
| Hannah Kucine | 117.8 | | 117.8 |
| Various Paraprofessionals | 77.8 | | 77.8 |

Mr. Fox billed for 79 hours between June 9, 2023, and July 21, 2023, plus another 3 hours after that date for work that the Court can discern was related to the application for attorneys' fees. (Civ. No. 23-3126, ECF No. 70-1 at 2). In total, Mr. Fox worked 82 hours for which he is potentially entitled to reimbursement.

Defendants dispute the reasonableness of the hours charged by Plaintiffs' counsel on two main bases. First, Defendants attack numerous line items recorded by Plaintiffs' counsel as "excessive," "redundant," or "simply unnecessary." (Civ. No. 23-2967, ECF No. 66 at 3; Civ. No. 23-3126, ECF No. 77 at 3). For example, Defendants attack as "implausible" that one attorney spent 14.5 billable hours in a single day working on the case, (*Id.* at 5), and repeatedly criticize work performed by Plaintiffs' counsel as redundant of earlier tasks billed by the same or other attorneys. (*See, e.g.*, *id.* at 7–8). Second, Defendants argue that Mr. Fox "is a principal of

---

[6] Gordon Rees seeks reimbursement for an additional $15,551 in fees for work performed after August 4, 2023. ((Civ. No. 23-3126, ECF No. 69 ¶ 7). However, counsel never submitted invoices or other documentation substantiating that work, so the Court in its discretion denies this request. *See United Auto. Workers Loc. 259 Soc. Sec. Dep't*, 501 F.3d at 291.

the Plaintiff" and "is not counsel of record or litigation counsel" and thus should not be permitted

to make an application for attorneys' fees. (*Id.* at 13–14).

The Court finds that neither of Defendants' arguments have merit. Defendants' objections

to the reasonableness of the hours expended by Plaintiffs' counsel amount to a "mere[]

alleg[ation] in general terms that the time spent was excessive." *See Bell*, 884 F.2d at 720.[7] That

is not enough to deny Plaintiffs' request for fees. Far from being inadequate, Plaintiffs'

documentation of work performed by their attorneys is quite detailed. The billing invoices

submitted by Plaintiffs contain a description of each unit billed. (*See generally* Civ. No. 23-2967,

ECF No. 60; Civ. No. 23-3126, ECF No. 69–70) When Defendants objected that some

descriptions were excessively redacted or that some work was unnecessary, (Civ. No. 23-2967,

ECF No. 66; Civ. No. 23-3126, ECF No. 77), Plaintiffs filed additional affidavits and

documentation that further justified the hours billed. (Civ. No. 23-2967, ECF No. 68; Civ. No.

23-3126, ECF No. 79). Specificity as to hours billed is required only "to the extent necessary for

the district court to determine if the hours claimed are unreasonable for the work performed."

*Washington*, 89 F.3d at 1037. Plaintiffs meet that burden here, and the Court finds that the hours

billed by Plaintiffs within the relevant date ranges were reasonable.

Mr. Fox, meanwhile, is entitled to attorneys' fees. Quite the opposite of not being

"counsel of record," Mr. Fox was admitted *pro hac vice* in this case on June 9, 2023. (Civ. No.

23-3126, ECF No. 10). And as Plaintiffs' filings make clear, Mr. Fox is not a principal of any of

the Plaintiffs but rather Mr. John's personal attorney. (Civ. No. 23-3126, ECF No. 79 at 3).

---

[7] The lone exception to this conclusion is Defendants' flagging a duplicative billing entry by
Mercedes Colwin, a partner at Gordon Rees, on May 31, 2023. (Civ. No. 23-2967, ECF No. 66
at 16; Civ. No. 23-3126, ECF No. 77 at 16). However, because this work was performed prior to
the relevant Order to Show Cause in Civ. No. 23-3126, Gordon Rees is not entitled to
reimbursement for this work anyway.

iii.     ***Attorneys' Fees Owed to Plaintiffs***

Having established a reasonable hourly rate and the number of hours reasonably expended on the litigation, the Court will multiply the two to arrive at what the Court believes is the total, reasonable amount that Defendants owe Plaintiffs for attorneys' fees. *See Eichenlaub*, 214 F. App'x at 222 ("There is a strong presumption that the lodestar amount is reasonable.") (internal quotation marks omitted). For Gordon Rees, however, the maximum they can receive is $75,000, which is what they charged their clients for all work through August 4, 2023. *See Pub. Int. Rsch. Grp. of New Jersey*, 51 F.3d at 1188 ("Hours that would not generally be billed to one's own client are not properly billed to an adversary.").

| Timekeeper | Reasonable Hourly Rate | Hours Reasonably Worked | Total Amount Owed |
|---|---|---|---|
| ***Hyland Levin*** | | | |
| Benjamin A. Levin | $460.50 | 80.9 | $37,254.45 |
| David R. Dahan | $424.97 | 200 | $84,994.00 |
| Megan Knowlton Balne | $423.04 | 4.9 | $2,072.90 |
| Beau C. Wilson | $300.36 | 3.1 | $931.12 |
| Paige A. Joffe | $221.61 | 301.9 | $66,904.06 |
| Lori A. Clarke-Ratliff | $222.86 | 16.7 | $3,721.76 |
| Mary Alice Rogers | $260.31 | 11 | $2,863.41 |
| Chelsea J. Householder | $212.74 | 0 | $0.00 |
| **FIRM TOTAL** | | | **$198,741.70** |
| ***Solo Practitioner*** | | | |
| Lawrence Fox | $315.12 | 82 | **$25,839.84** |
| ***Gordon Rees*** | | | |
| Mercedes Colwin | $520.00 | 52.9 | $27,508.00 |
| Jeffrey Camhi | $472.50 | 0 | $0.00 |
| Brittany Primavera | $367.50 | 134.4 | $49,392.00 |
| Lindsey Blackwell | $367.50 | 30 | $11,025.00 |
| Maggie Delany | $290.00 | 11.6 | $3,364.00 |
| Hannah Kucine | $290.00 | 117.8 | $34,162.00 |
| Various Paraprofessionals | $150.00 | 77.8 | $11,670.00 |

| FIRM TOTAL | | | **$137,121.00 (but $75,000 max reimbursable)** |
|---|---|---|---|

Therefore, the total amount in attorneys' fees that Defendants owe Plaintiffs is

$299,581.54, broken down as follows:

- Hyland Levin: $198,741.70;

- Mr. Fox: $25,839.84; and

- Gordon Rees: $75,000.

### iv.     *Litigation Costs Owed to Plaintiffs*

Hyland Levin and Gordon Rees also seek reimbursement for costs incurred during this

litigation. (Civ. No. 23-2967, ECF No. 60-7 at 5; Civ. No. 23-3126, ECF No. 69 ¶ 39).

Defendants in their brief opposing the award of attorneys' fees do not dispute Plaintiffs' request

for litigation costs. (*See* Civ. No. 23-2967, ECF No. 66; Civ. No. 23-3126, ECF No. 77).

Therefore, Plaintiffs' request is unopposed.

The Court will award litigation costs incurred during the same date ranges established

above. Hyland Levin seeks $7,347.87 in costs. (Civ. No. 23-2967, ECF No. 60-7 at 5, 16, 25–26,

30) The firm incurred $1,790.23 of that amount prior to May 31, 2023, or after July 21, 2023.

(*Id.*) Therefore, Hyland Levin is entitled to $5,557.64 in costs.

Gordon Rees, meanwhile, seeks $9,971.05 in costs, all of which was incurred between

June 7, 2023, and July 21, 2023. (No. 23-3126, ECF Nos. 69 ¶ 39, 69-2 at 2–3). Therefore,

Gordon Rees is entitled to $9,971.05 in costs.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Reconsideration (Civ. No. 23-2967, ECF No. 50; Civ. No. 23-3126, ECF No. 58) is **DENIED**. Plaintiffs are **awarded attorneys' fees and litigation costs in the amount of $316,900.46**, broken down as follows:

- Hyland Levin: $206,089.57 ($198,741.70 in attorneys' fees and $7,347.87 in costs);

- Mr. Fox: $25,839.84 (all attorneys' fees); and

- Gordon Rees: $84,971.05 ($75,000 in attorneys' fees and $9,971.05 in costs).

An appropriate Order follows.


Dated:   March 5, 2024                              /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge